## In re AKTIEBOLAGET KREUGER & TOLL.

### No. 255.

Circuit Court of Appeals, Second Circuit.

May 9, 1938.

Spence, Hopkins, Walser & Hotchkiss, of New York City (Kenneth M: Spence and Valerian E. Greaves, both of New

York City, of counsel), for appellant Lee, Higginson Trust Co.

Hunt, Hill & Betts, of New York City (Robert McLeod Jackson, of New York City, of counsel), for appellants Berkowitz and Greenwood.

Louis R. Patur, of Brooklyn, N. Y., for Alexander Morse, American certificate holder.

Sullivan & Cromwell, of New York City (John Foster Dulles, Edward H. Green, and Philip L. Miller, all of New York City, of counsel), for Marine Midland Trust Co.

Winthrop, Stimson, Putnam & Roberts, of New York City (George Roberts, of New York City, of counsel), for Edward S. Greenbaum, trustee in bankruptcy of Aktiebolaget Kreuger & Toll.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The order appealed from rejected the claims of Lee, Higginson Trust Company as trustee and certain individual holders of the bankrupt's participating debentures who claim they were on a par with claims of general creditors. The order, however, allowed but subordinated the claims, both as to principal and interest, to the general creditors. The appeal is from so much of the order as subordinated their claims.

The Marine Midland Trust Company is trustee under an indenture, dated March 1, 1929, securing an issue of debentures of the bankrupt (the secured debenture in contradistinction to the participating debentures in issue) of which there were about $48,000,000 in principal amount outstanding at the time of bankruptcy. Marine Midland's claim as a general creditor has been allowed.

The bankrupt is a Swedish corporation organized under the Swedish Companies Act. Its capital structure consists of 5 per cent. secured sinking fund gold debentures (the issue represented by Marine Midland), ordinary shares and the participating debentures primarily involved. The participating debentures which are the securities here in issue were authorized by the stockholders at a general meeting. These debentures were issued in Swedish currency (kronor) in denominations of 20 kronor each (about $5) and in multiples thereof. There was no promise to pay the principal at any fixed date but the debt may be extinguished by (a) on or after July 1, 2003, the holder of a participating debenture calling for payment at par with interest; (b) the company's redeeming on three months notice published as described. Under clause 5 of the debentures, the redemption price was to be the average price on the London Stock Exchange for the preceding three months. If this was not available, then the Stockholm stock exchange prices were to form the basis and, if neither were available, then the price was to be fixed by an impartial institution to be nominated by the shareholders of the company at a general meeting. Clause 6 of the participating debentures provides:

"In the event of liquidation all Debentures issued simultaneously herewith or subsequently as provided in clause 4 shall be redeemed out of the assets of the Company at a price to be determined according to the provisions of clause 5 (summarized above), before any distribution of such assets is made to the shareholders, but after all other debts of the Company have been paid. In the event of liquidation the three months for which the quotations are to be used for deciding the price of redemption in accordance with clause 5 shall be those immediately preceding the month in which the Company is legally placed in liquidation."

They bore "interest" at 5 per cent. per annum and additional interest at 1 per cent. for each 1 per cent. paid on the ordinary shares of the company in excess of 5 per cent. Payment of interest was due on July 1 against the surrender of a coupon and covered the amount payable with respect to the preceding calendar year. The participating debentures provided for payment of principal and interest in kronor at the office of the company in Stockholm or at the option of the holder in sterling in London at London bankers' buying rate for sight drafts on Stockholm. Later some of these debentures were deposited with Lee, Higginson Trust Company under a deposit agreement and it issued its American certificates against the deposited debentures and these certificates were listed on the New York Stock Exchange. They were dealt in as stocks as distinguished from bonds.

In March, 1932, when the bankrupt became financially involved, it had no residence or domicile in the United States nor was it registered to do business here.

770

In 1932 Kreuger and Toll went into liquidation in Sweden and liquidators were appointed. This bankruptcy proceeding was filed in the court below as against whatever American assets it had, and there were accumulated here about $3,500,000. A trustee in bankruptcy was appointed. Appellant, Lee, Higginson, filed a claim in the Swedish bankruptcy proceedings on the debentures which it held under the deposit agreement claiming originally for principal, interest for the year 1931, and interest from January 1, 1932, to the date of bankruptcy. It claimed these amounts on a parity with other general creditors. The appellant in the Swedish proceedings withdrew its claim as to principal and interest from January 1, 1932, and litigated only the interest for the year 1931. The highest court of Sweden decided that this claim could not be on a parity with those of general creditors. It pointed out that under clause 6 the principal was subordinated and concluded that there was no reason to treat interest on a different basis from principal.

The issue there, as the issue here, is between participating debenture holders and general creditors in order to determine their relative priorities. Appellants argue that there is no privity between the Swedish liquidator and the United States trustee in bankruptcy, and that, therefore, the judgment of the Swedish courts is not res adjudicata or controlling. We need not decide that question.

There is a controversy between two classes of security holders which was contested in the Swedish courts and it is argued the issue presented here is the same as presented there, that the representative of one class (participating debenture holders) is the same and the representatives of the general creditors in Sweden was the Swedish trustee in bankruptcy, while here he is the United States trustee in bankruptcy. We need not consider this claim.

There was no reason for limiting clause 6 to voluntary liquidation. Subordination to the general creditors of the participating debentures would be meaningless in a solvent corporation, and thus the argument is unsound that it applies only where the company is solvent. The Bankruptcy Act requires that assets of the debtor be liquidated and applied to the payment of debts. That is liquidation within the meaning of clause 6, as the Swedish court held.

Appellant argues that the Bankruptcy Act prohibits contractual agreements for subordination, unless the creditor claiming the priority is a party to the contract or was the sole beneficiary or there is an estoppel. Section 64b of the Bankruptcy Act, as amended, 11 U.S.C.A. § 104(b), for reasons of public policy, creates priorities regardless of the parties' contracts and overrides inconsistent covenants. But this does not mean that the parties are prohibited from making contracts for a priority or subordination in so far as they do not impinge upon statutory priorities. Section 65a of the act, 11 U.S.C.A. § 105(a), means no more than that dividends paid to creditors shall be pro rata except where there is a priority given by law or by lawful contractual arrangement between the parties. Bird & Sons Corporation v. Tobin, 8 Cir., 78 F.2d 371, 100 A.L.R. 654.

The claims for all interest is subordinated to the claim of other general creditors. The coupon is not a separable instrument, and therefore the subordination applies to the interest as well as to the principal.

Decree affirmed.