## SCHOPPE v. FIRST TRUST CO. OF LINCOLN, NEB., et al.

## In re LINCOLN SAFE DEPOSIT CO.

### No. 11216.

Circuit Court of Appeals, Eighth Circuit.

Feb. 1, 1939.

418

J. Lee Rankin, of Lincoln, Neb. (Maxwell V. Beghtol and Glen H. Foe, both of Lincoln, Neb., on the brief), for appellant.

Ira D. Beynon, of Lincoln, Neb. (Richard O. Williams and Willis R. Hecht, both of Lincoln, Neb., on the brief), for appellee First Trust Co. of Lincoln, Neb.

Before SANBORN, THOMAS, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

The appellant, as assignee of Edward R. Danielson, filed an application in the matter of the Lincoln Safe Deposit Company, a corporation, bankrupt, on June 23, 1937, for an order directing L. A. Ricketts, trustee in bankruptcy of that company, to pay to her all dividends under Claim 445 filed January 6, 1933, by the First Trust Company of Lincoln, Nebraska, as successor trustee of the Lincoln Trust Company under a mortgage, which claim was allowed in the sum of $3,850.78 on April 20, 1937. The referee denied this application on August 19, 1937, and, upon petition for review, the court below confirmed the order of the referee on February 9, 1938. The appellant filed her petition for appeal on February 28, 1938, and the appeal was allowed by the District Court on that date. No petition for allowance of an appeal was made to this Court.

The Lincoln Safe Deposit Company and the Lincoln Trust Company, affiliated companies apparently engaged in making and selling mortgage loans, were adjudicated bankrupts on July 9, 1932. On December 28, 1928, Edward R. Danielson and wife mortgaged a 240-acre farm in Polk County, Nebraska, and 9.15 acres of land in Lancaster County, Nebraska, to the Lincoln Safe Deposit Company to secure a loan of $42,500, evidenced by bonds payable June 26, 1929. In the mortgage, the Lincoln Trust Company was named as trustee for the bondholders. The mortgage and bonds were subsequently extended to December 26, 1933. The Polk County farm, with the consent of the trustee, but without the knowledge or consent of the bondholders, was sold by Danielson free of encumbrances, and, out of the proceeds of the sales, the Lincoln Safe Deposit Company received $5,850.78. There were at that time $10,000 of the Danielson bonds outstanding, $2,000 of which were held by the Lincoln Trust Company. The $5,850.78 received by the Safe Deposit Company was not applied to the payment of the bonds, but went into its bank account and was used by it. After these affiliated companies were adjudged bankrupt and on July 21, 1932, the First Trust Company, of Lincoln, Nebraska, one of the appellees, was appointed trustee under the Danielson mortgage, to succeed the Lincoln Trust Company, bankrupt.

The first thing the successor trustee did was to file Claim 445 in the matter of Lincoln Safe Deposit Company, bankrupt, for $5,850.78. The proof of claim recited: "That The First Trust Company, claimant, herein, files this claim for and on behalf

of and because of the above named trusteeship and in behalf of all parties in interest under said trust and without prejudice to the rights of the borrowers and note holders." The basis of the claim was the collection of the $5,850.78 by the bankrupt from Danielson, the borrower, which was not applied upon the outstanding bonds secured by the Danielson mortgage, but was retained and used by the bankrupt.

The next thing the successor trustee did was to bring a suit in the State court to foreclose the Danielson mortgage as to the land in Lancaster County, which was the only security which had not been released. In its petition in the foreclosure suit, the successor trustee alleged that there were unpaid $10,000 of these bonds and that, with interest, there was due upon them to January 26, 1935, $12,772.08. The appellant, Helen Schoppe, a daughter of Danielson, who had acquired title to the Lancaster County land, subject to the mortgage, filed an answer in the foreclosure suit, and asserted that the debt secured by the mortgage had been reduced by the payment of the $5,850.78 received by the Safe Deposit Company from Danielson. The successor trustee filed a reply, asserting, in effect, that the mortgage debt had not been reduced by that payment, because the bondholders had never received it and had no knowledge of it. After a trial, the State court in which the foreclosure suit was brought, concluded that the $5,850.78 should be applied in reduction of the mortgage debt. On appeal, the Supreme Court of Nebraska held that $2,000 of this amount should be applied in payment and satisfaction of the $2,000 of bonds which were held by the Lincoln Trust Company, but that the balance of $3,850.78 could not be applied in reduction of the mortgage debt represented by the other bonds, since the holders of those bonds had received none of this $3,850.78 and the payment of it to the Lincoln Trust Company and the Lincoln Safe Deposit Company was not, under the circumstances, to be regarded as a payment made to those bondholders. First Trust Co. of Lincoln, Neb. v. Danielson, 132 Neb. 141, 270 N.W. 680. In accordance with the mandate of the Supreme Court of Nebraska, the lower court determined that there was due upon the Danielson mortgage $9,519 with interest at 10% from October 22, 1935. On April 8, 1937, under the decree in foreclosure, the land

in Lancaster County was sold, and was bid in by the successor trustee for $5,500, or about one-half of the total mortgage debt. No deficiency judgment was procured against Danielson.

On April 20, 1937, a hearing was had before the referee in bankruptcy upon Claim 445 filed by the successor trustee for $5,850.78. Helen Schoppe, as "assignee of any claim or interest that the said Edward R. Danielson might have in and to said claim," appeared. The referee determined that, since the Supreme Court of Nebraska had held that $2,000 of the $5,850.78 was to be treated as payment of the two bonds held by the Lincoln Trust Company at the time the $5,850.78 was received, the claim of the successor trustee should be allowed in the sum of $3,850.78. No appeal was taken from the allowance of the claim.

After the claim was allowed, Helen Schoppe, as "assignee of any and all rights or claims or interests therein which Edward R. Danielson had or might have against the Lincoln Safe Deposit Company, bankrupt, either directly or through the First Trust Company, as Successor-trustee," applied to the referee for an order directing the trustee in bankruptcy to pay all dividends upon this claim to her. She asserted in her application that the First Trust Company, as successor trustee, was trustee for her as an assignee of the rights of Danielson; that the Supreme Court of Nebraska, in the foreclosure suit, had in effect held that $3,850.78 of the $5,850.78 received by the Lincoln Safe Deposit Company from the proceeds of the sales of the Polk County farm was not intended as payment to the bondholders, but was the money of Danielson in the hands of his agent (the bankrupt), which that agent was bound to repay to him. The successor trustee filed objections to the appellant's application, and asserted that the $3,850.78 represented the proceeds of the sale of a portion of the security of the bondholders whose bonds had not been paid in full. It also asserted that the appellant had filed no claim herself, and that it had filed no claim on her behalf, and it denied that she had any interest in Claim 445. As already pointed out, the referee denied the application, his order was confirmed by the District Court, and the appellant was allowed an appeal by that court from the order of confirmation.

420

The first question to be determined is whether this Court has jurisdiction to review this controversy.

The appellant says in her brief: "The action is a controversy in bankruptcy within the terms of Section 47, Title 11 of U.S. C.A. and involves a claim in excess of $500.00 under the terms of Section 48, Title 11 of U.S.C.A."

At the time this appeal was taken, 44 Stat. 665; 48 Stat. 926, Section 48, Title 11, U.S.C., 11 U.S.C.A. § 48 provided: "(a) Appeals, as in equity cases, may be taken in bankruptcy proceedings from the courts of bankruptcy to the circuit courts of appeal of the United States and the United States Court of Appeals for the District of Columbia and to the supreme courts of the Territories in the following cases, to wit: (1) From a judgment adjudging or refusing to adjudge the defendant a bankrupt; (2) from a judgment granting or denying a discharge; and (3) from a judgment allowing or rejecting a debt or claim of $500 or over. Such appeal shall be taken within thirty days after the judgment appealed from has been rendered, and may be heard and determined by the appellate court in term or vacation, as the case may be."

■ This appeal was not taken under that section. The order appealed from was not one allowing or rejecting a debt or claim of $500 or over. The order allowing Claim 445 had already become a final order. Patents Process, Inc. v. Durst, 9 Cir., 69 F.2d 283, 284.

Under the provisions of Section 47(a), Title 11, U.S.C., 11 U.S.C.A. § 47(a), when this appeal was taken the District Court had authority to allow appeals in "controversies arising in bankruptcy proceedings"; and under the provisions of Section 47(b), Title 11, U.S.C., 11 U.S.C.A. § 47(b), "proceedings" of the courts of bankruptcy were reviewable only upon appeal allowed by this Court. Therefore, if this controversy is a "controversy arising in bankruptcy proceedings," the allowance of the appeal by the District Court gave this Court jurisdiction. If, on the other hand, this is a controversy arising out of a "proceeding" in bankruptcy, the allowance of the appeal by the District Court conferred no jurisdiction upon this Court.

■ "If the appeal should have been allowed by this court, and not by the trial court, we have no authority to review this case." Hunter v. Commerce Trust Co., 8 Cir., 55 F.2d 1, 3; Schnurr v. Miller, 8 Cir., 49 F.2d 109, 110.

■ The "controversies arising in bankruptcy proceedings" referred to in Section 47(a), Title 11, U.S.C., 11 U.S.C.A. § 47 (a), Section 24a of the Bankruptcy Act "include those matters arising in the course of a bankruptcy proceeding, which are not mere steps in the ordinary administration of the bankrupt estate, but present, by intervention or otherwise, distinct and separable issues between the trustee and adverse claimants concerning the right and title to the bankrupt's estate. * * * On the other hand, the 'proceedings' in bankruptcy referred to in section 24b [of the Bankruptcy Act; 11 U.S.C. § 47(b), 11 U. S.C.A. § 47(b)] are those matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate." Taylor v. Voss, 271 U.S. 176, 180, 181, 46 S.Ct. 461, 463, 70 L.Ed. 889; see, also, Hunter v. Commerce Trust Co., supra, 8 Cir., 55 F.2d 1, 3; In re Schulte-United, Inc., 8 Cir., 59 F.2d 553, 558; Chicago Bank of Commerce v. Carter, 8 Cir., 61 F.2d 986, 990, 991; In re National Finance & Mortgage Corporation, 9 Cir., 96 F.2d 74, 75.

■ If the controversy which we are asked to review is a matter of an administrative character involving questions between the bankrupt and his creditors presented in the ordinary course of the administration of the bankrupt's estate, then it was not subject to review upon the allowance of the appeal by the District Court. If it is a controversy where a third party is not claiming under the administration of the estate in bankruptcy, but is attacking the title of the trustee or the right of the court to administer the estate in bankruptcy, the case is reviewable, although no appeal was allowed by this Court.

While it is not certain that the court of bankruptcy was compelled to determine whether the claim filed by the successor trustee was for the benefit of the bondholders or for the benefit of the appellant, that being largely a collateral matter in which the trustee in bankruptcy has little

interest,[1] it is certain that the appellant was not attacking the title of the trustee to any portion of the bankrupt estate or the right of the court to administer the estate in bankruptcy.

The controversy which we are asked to review is clearly a controversy between alleged creditors of the bankrupt over the dividends from a single claim. The successor trustee, as representative of the bondholders, is seeking to secure these dividends for their benefit. The appellant is seeking the proceeds of this claim upon the theory that the successor trustee, in filing it and securing its allowance, represented her assignor, Danielson, who was entitled to the $3,850.78, and that the claim must be held to have been filed for her benefit. The only interest that the court of bankruptcy had in the matter was in connection with the administration and distribution of the estate to the creditors. Under the circumstances we think it is clear that the controversy between the appellant and the successor trustee, as the representative of the bondholders, over dividends to be paid upon this claim was a "proceeding" in bankruptcy, and not a "controversy" arising in bankruptcy proceedings. Therefore, the allowance of the appeal by the District Court conferred no jurisdiction upon this Court to review this controversy. Compare Bird & Sons Sales Corporation v. Tobin, 8 Cir., 78 F.2d 371, 100 A.L.R. 654; McDaniel Nat. Bank v. Bridwell, 8 Cir., 74 F.2d 331; Foster v. McMasters, 8 Cir., 15 F.2d 751, 753-755; Patents Process, Inc. v. Durst, 9 Cir., 69 F.2d 283, 284, 285.

We are of the opinion, however, that even if this Court had jurisdiction of this case, the appellant could not prevail, since it is our view that the Supreme Court of Nebraska did not decide, and had no occasion to decide, that the bondholders had no right to the $3,850.78 derived from the sale of a part of their security, and we think that their equities in the claim filed by the successor trustee were superior to those of the appellant.

The appeal is dismissed.

[1] See In re Railroad Supply Co., 7 Cir., 78 F.2d 530; Smith v. Chase National Bank, 8 Cir., 84 F.2d 608, 614; and compare Bird & Sons Sales Corporation v. Tobin, 8 Cir., 78 F.2d 371, 100 A.L.R. 654, together with annotations on page 660 of 100 A.L.R.

In Chauncey v. Dyke Bros., 8 Cir., 119 F. 1, 3, this Court said: "A court which has lawfully acquired the custody of property or money must of necessity dispose of the same according to law; and, when conflicting claims are preferred, it is not bound to require the claimants to litigate their claims in some other forum, and to adopt the judgment of that tribunal, although it may do so, but it is at liberty to dispose of such controversies according to its own ideas of right and justice."